UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DARREN BOWIE, ET AL                                              CIVIL ACTION

VERSUS                                                                       NUMBER: 05-1381-JJB-DLD

AMERICAN HOME ASSURANCE COMPANY,
ET AL

## ORDER

This matter is before the court on defendant's motion to compel functional capacity examination. (rec. doc. 22). The motion is opposed. (rec. doc. 23).

**Background**

On December 7, 2004, plaintiff's 2004 semi-truck was rear-ended by defendant Fulton's semi-truck, and plaintiff suffered injuries which allegedly prevent him from returning to his occupation at the time of the accident, or even to any occupation.[1] Plaintiff claims that the acts or omissions of defendant Fulton constitute negligence and/or fault under Louisiana law, and that he suffered, among other things, wage loss and impaired earning capacity. (rec. doc. 22-4). Thereafter, plaintiff filed suit in the 19th Judicial District Court for the Parish of East Baton Rouge Parish on November 7, 2005, and the defendants removed the case to this court on December 7, 2005, on the grounds of diversity jurisdiction.

Beginning on November 10, 2005, plaintiff began treating with Dr. William Donovan, an orthopedic surgeon. (rec. doc. 22-5). On September 19, 2007, Dr. Donovan performed arthroscopic knee surgery relating to a subluxation of the left patella and a torn left medial

---

[1] At the time of the accident, plaintiff was an over-the-road truck driver.

meniscus. On the same day, Dr. Donovan issued a report stating that "patient is totally disabled and unable to work. Additional treatment indicated." (rec. doc 22-5)

On November 5, 2007, Dr. Donovan issued another report diagnosing plaintiff with HNP C6-7[2] along with the subluxation of the left patella and the torn medial meniscus, but stated that plaintiff's progress is "satisfactory following surgery to the left knee. (rec. doc. 22-6) Dr. Donovan also opined as follows:

> Based on clinical evaluation 11/05/07, patient is going to have some difficulty with his left lower extremity which will affect his ability to work as an 18 wheel driver requiring climbing onto his load to secure the load and drive for long distances. Patient will not be capable of returning to work as an 18 wheel driver. . . . On 11/05/07, patient was fitted with an off the shelf knee brace for the left knee to help stabilize the quadriceps muscle and the left patella.

At some point subsequent to plaintiff's surgery, and based on the two different opinions put forth by Dr. Donovan as to plaintiff's ability to work, defendants forwarded the plaintiff's medical records and operative report to their own orthopedic surgeon, Dr. Stephen Esses. On April 2, 2008, after reviewing the records and report, Dr. Esses opined that it would be appropriate for the plaintiff to undergo a functional capacity examination in order to more objectively assess "what he is capable of and not capable of doing." (rec. doc. 22-7).

Defendant requested a functional capacity examination ("FCE") pursuant to F.R.C.P. Rule 35, and plaintiff objected to the examination, which resulted in the instant motion being filed.

**The Motion to Compel**

Defendant alleges that F.R.C.P. Rule 35 allows a physical examination in the form of an FCE when the "physical condition of a party is in controversy and good cause is

---

[2]Dr. Donovan stated in his report that the cervical injury did not require surgery.

shown" (rec. doc. 22-2), that such examinations may be ordered by the court within certain limitsm and that this case is one where the criteria for a Rule 35 exam has been met. Defendant states that because plaintiff has requested damages due to his wage loss and impaired earning capacity, plaintiff has placed his physical condition in controversy. Defendant further states that Rule 35 is "designed in part 'to place the parties on a level playing field when the physical or mental condition of a party is at issue,'"[3] and defendant requires an objective assessment of plaintiff's capabilities." Defendant states that even though plaintiff does not have his own FCE expert, defendant is still entitled to an FCE of plaintiff.

Plaintiff opposes the FCE, stating that defendant's "sole basis" for the motion is that defendant's expert has requested it. Plaintiff states that plaintiff's treating physician has not requested an FCE, and plaintiff intends to rely on Dr. Donovan's testimony as the treating physician as to the functional restrictions resulting from the injuries suffered in the car accident. Plaintiff states that defendant's expert, Dr. Esses, rendered two reports based on an examination in April 2006,[4] and saw plaintiff again recently for an updated evaluation. Additionally, the plaintiff is scheduled to see defendant's vocational rehabilitation counselor shortly. Plaintiff cites to three cases advancing his position that a FCE is not necessary -- the FCE will just produce a report outlining the functional limitations and experts who have already examined plaintiff can testify as to plaintiff's functional limitations without the need for a FCE report. Plaintiff also alleges that the evidence obtained by such an exam will be cumulative evidence only, and such exam is not medically necessary. Plaintiff further alleges that allowing plaintiff to undergo a FCE and allowing defendant to have a FCE

---

[3] Rec. doc. 22-2, *quoting Escobar v. Blessey Marine Services, Inc.*, 2004 WL 2115270 (E.D. La. 2004).

[4] Again, Dr. Esses' reports are not in the record and therefore are not before this court.

-3-

expert will lead to plaintiff having to retain a FCE expert, which will increase the cost of litigation. Lastly, plaintiff argues that it is a burden for plaintiff to have to travel from his hometown of Houston, Texas, to New Orleans, Louisiana, and that if the court decides to order the exam, that the defendant should be required to use an examiner in Houston.

Defendant responds that it agrees to cover the costs of plaintiff's travel to New Orleans for the examination. Defendant further argues that their having a FCE does not necessitate the plaintiff's hiring of an FCE expert.

**The Law**

Rule 35 of the F.R.C.P. states in pertinent part:

**Rule 35. Physical and Mental Examinations**

(a) Order for an Examination.
     (1) In General.

     The court where the action is pending may order a party whose mental or physical condition — including blood group — is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

     (2) Motion and Notice; Contents of the Order.

     The order:

          (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and

          (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

**The Analysis**

Rule 35 has two criteria which must be met in order for an physical or mental examination of a party to take place. One, the mental or physical condition of the party

must be in controversy; and two, the motion for examination must be for good cause and set forth the specifics of the examination. When the parties dispute the necessity of an examination, it is within the sound discretion of the trial court to decide the matter. *Magee v. Pride Offshore, Inc.*, 2004 WL 224561 (E.D. La. 2/4/04)

The plaintiff's petition clearly stated that he suffered a wage loss and an impaired earning capacity due to the injuries sustained in the accident, thereby placing his ability to work at issue. Moreover, his own treating physician issued two reports, one report stating that the plaintiff was totally disabled and unable to work (9/19/07 report) and one report stating that the plaintiff was going to have "some difficulty with his left lower extremity" and would not be capable of returning to work in his previous occupation as an 18-wheel driver (11/5/07 report). Dr. Esses' reports have not been provided. Obviously, if Dr. Esses agreed with Dr. Donovan, there would be no issue regarding plaintiff's physical condition; therefore, the first criteria for a Rule 35 examination has been met.

The second criteria for a Rule 35 examination includes specificity as to the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.[5] There is no dispute between the parties as to this issue.

As the plaintiff does not dispute that his physical condition is in controversy, and there is no dispute regarding the parameters of the examination, the only issue before this court is whether the defendant has met the "good cause" criteria for requesting the examination.

---

[5] The court notes that the defendant has not asked for a functional capacity examination to investigate plaintiff's ability to work in any capacity; just his ability to work in his previous capacity.

In *Mayfield v. Continental Underwrites, Ltd.*, 2007 WL 4522602 (W.D. La. 12/14/2007), the court stated that Rule 35 does not limit the number of examinations to which a party may be subjected, and the number of examinations depend entirely on the underlying circumstances of the request. *Mayfield*, *quoting Moore v. Calavar Corp.,* 142 F.R.D. 134, 135 (W.D. La. 1991), *citing Teche Lines v. Boyette*, 111 F.2d 579 (5th Cir. 1940). In addition, the *Mayfield* court stated that where "the moving party has already made an examination in the past, . . . the court will require a stronger showing of necessity before it will order repeated examinations." *Mayfield*, at 2, *quoting* §8A, C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure, §2234 AT 475.

In *DeCrescenzo v. Maersk Container Service Co.*, 741 F.2d 17, 21 (2d Cir. 1984), the court stated that if there has already been an examination and report which enables the defendant to adequately defend the lawsuit, a second exam is not necessary. And, although that court also determined that one of the circumstances which might necessitate a second examination would be when a physician "requires the assistance of other consultants before he can render a diagnosis," that is not the case here. *DeCrescenzo,* at 21. The defendant's expert, Dr. Esses, has examined the plaintiff on two occasions and issued two reports. Dr. Esses has opined that a FCE would be "appropriate" to "more objectively assess" what plaintiff can or cannot do; however, Dr. Esses has not opined that such an exam is medically necessary, or that he cannot objectively assess plaintiff's limitations, or that he cannot respond to the opinions put forth by plaintiff's treating physician. (rec. doc. 22-7). There is no indication that Dr. Esses cannot render a diagnosis without the aid of other consultants. Moreover, the plaintiff is currently scheduled for a vocational rehabilitation examination by the defendant's expert. This examination will be

the third examination by the defendant's expert, and a fourth examination serves no other purpose than as a source of cumulative evidence. The defendant can adequately defend its case based on the existing exams and reports.

Moreover, the court is not persuaded by defendant's argument that this case is factually similar to *Escobar v. Blessey Marine Services, Inc.*, 2004 WL 2115270 (E.D. La. 9/21/04). In *Escobar*, the motion to compel a Rule 35 examination was granted because the circumstances of the case had changed, in that while the defendants were proceeding on the assumption that Escobar would proceed with the recommendation of surgery, Escobar declined to proceed with the surgery; Escobar belatedly provided supplemental limitation reports; and Blessey Marine's expert reported that a FCE was required before he could render an expert opinion. *Escobar*, at 2. Here, there are no change in circumstances as Dr. Esses has twice examined the plaintiff; Dr. Esses has not said he cannot render an opinion without a FCE; and Dr. Esses' report to counsel was prepared several months after plaintiff's surgery in September 2007, and plaintiff's follow-up examination with Dr. Donovan in November 2007. Defendant therefore has not demonstrated a strong showing of good cause for a fourth examination.

Accordingly,

**IT IS ORDERED** that defendant's motion to compel functional capacity examination (rec. doc. 22) is **DENIED**.

Signed in Baton Rouge, Louisiana, on May 13, 2008.

**MAGISTRATE JUDGE DOCIA L. DALBY**